Case number 4-16-01-00, the people of the state of Illinois v. Robert Peel. And Ms. Moore, would you step forward and state your name for me? I want to make sure that I'm saying that correctly. Thank you. Good morning, Your Honors. It's Editha Rosario-Moore, representing Robert Peel, the defendant appellant, on behalf of the Office of the State Appellate Defender. Thank you. Editha Rosario-Moore. All right. Thank you, Counsel. And then we have for the appellee, Ms. McClain. You may proceed, Counsel. Thank you. Your Honors, Mr. Peel has raised four issues on appeal. Today, I would like to discuss the first two issues and answer any questions Your Honors might have on the remaining two issues. Robert was a former Marine and nurse from Hayworth and was convicted of reckless discharge of a firearm after a jury trial. In order to convict Robert, the state had to prove that he discharged a firearm in a reckless manner and that in doing so, he endangered the bodily safety of an individual other than himself. Here, the state failed to prove either element. Now, the state's theory of the case was that Robert fired directly into the air across the street in front of him. And because he fired into the air, that was reckless and there was evidence of people in the vicinity which showed that he endangered the bodily safety of an individual. But the state presented no evidence that the gun was pointed in the air. It presented no evidence of the direction that that gun was pointed. Daryl Carr testified for the state that he was across the street diagonally from defendant, about 270 feet away, and he saw a muzzle blast at the same level of the doorbell. But he admitted that he didn't see the person firing the weapon and that that person might have been a few feet from the door. So counsel, were there reasonable inferences to be drawn from that? I think seeing a muzzle blast at night proves nothing about the direction that that gun was pointed. And that's the only evidence that the state presented in terms of the direction that the gun was fired. The state otherwise presented physical evidence that didn't corroborate its theory that Robert was standing at his front door. Because it was unrebutted that the casings ejected from defendant's gun back into the right. And then the state presented physical evidence that showed casings that were in front of the door on the porch. And so if defendant was standing at the door, those casings would have been inside the house. So this physical evidence contradicted the state's own theory. But besides that, the state otherwise didn't present any evidence on the direction that that firearm was pointed. And the state in this case relied heavily on Collins. And in Collins, we had different circumstances there because the defendant conceded that he fired into the air and that that was reckless. The question there was whether he actually endangered someone. But here, there's no evidence that Robert fired his gun into the air. You keep saying into the air, and the implication to that is up and into the air as opposed to just out the front door, which is a reasonable inference from Mr. Carr's testimony that he sees the doorbell light. He sees a series of four flashes coming from from the front door straight across from the doorbell is what he said. Right. But Mr. Carr also admitted that he didn't see the person. And so he couldn't actually position that person at the front door. Although the front porch light was on, he acknowledged that he didn't see a person. Right. And also that that person wasn't necessarily at the door. Sure. I would submit then that just seeing that muzzle blast still doesn't prove that that gun was pointed in the air. And pointing the gun from the door is still pointing it in the air. Unless, of course, that gun was pointed in the ground, which is what defendant testified to. But this would have then put the muzzle flashes significantly lower because there's a series of steps leading from the front porch, correct? There were steps. And he said that he shot into a bare patch in the ground that he had cleared off, cleared the snow off of. That's right. As far as the muzzle blast, though, there was no evidence about muzzle blast length or muzzle blast direction. The state actually, the prosecutor actually argued in closing that the muzzle blast would have been shorter and closer to the ground. Well, the state didn't present any evidence on what that means. Even if the muzzle blast might have been lower, the muzzle blast being shorter doesn't give any information to the jury. The jury wasn't presented with any information about what that means. And the jury shouldn't introduce outside information if they have it on muzzle blast length or ballistics. So they were given conflicting evidence, and they chose to believe the testimony of the state's witness. Well, I would say that the prosecutor's argument was not evidence. And actually, the prosecutor argued facts not in evidence, which was a part of the third issue that we raised in effective assistance. They're clearly going to be lower to the ground for the physical placement of the front porch versus where he says they shot, correct? I think also, yes, but I think also the evidence showed that Mr. Carr was diagonally across the street and that his view was actually blocked by the garage. He didn't have a direct view of defendant, and he couldn't place the position of the defendant. But again, that's a credibility determination jurors had to decide. Even if the jury decided that they didn't want to believe anything defendant said, the state still didn't prove that that gun was not pointed at the ground or that it was pointed in the air, as it would have to prove if it was trying to show recklessness in that way. So your premise is that a gun fired at the ground is per se not reckless? It's not per se reckless. And that under the evidence that the jury was presented with here, there was no recklessness. The state is analogous to Moreno. Now, in that case, you had a defendant who was firing his gun at night in the backyard into a grassy area. There was no evidence of ricochet, and the only people who were present were behind him. So no one was harmed, the court found, except for the defendant in that case who fired a blanket at his hand to show the guests at his party that there was no real harm in what he was doing. And the state found that he wasn't reckless and that he didn't endanger an individual. The state says Moreno is inapplicable. Aside from the conflict of whether or not he fired into the air, the state said that Moreno didn't meaningfully address Collins. But that argument ignores the context of the Moreno court's reasoning. That reasoning begins well before the statement that the state cites here, no individual was in peril of probable harm or loss. That reasoning begins as early as paragraph 38, where the Moreno court summarizes Collins and acknowledges there that the defendant fired into the air, conceded that he did so, conceded it was reckless. The Moreno court continues to distinguish Watkins, an appellate court case which applied Collins, because that defendant also fired into the air. And the Moreno court held that the discharge into the ground was inherently different than firing into the air. And they relied on post. In Illinois Supreme Court case, it says firing into the ground is not per se reckless. The state also attempts to, well says that Moreno's distinguishing of Johnson, which is a fourth district case, wherein that defendant also fired into the ground. But that distinction was foreclosed by Collins. But again, that ignores the clear distinction between firing into the ground and firing into the air. Collins says it doesn't matter what direction you're pointing the gun if you're firing into the air, because common sense tells you that if you fire not knowing where the bullet's going to land, it could land anywhere and ricochet and harm someone. But when you're firing into the ground, you have a different scenario. Absent evidence of ricochet, the ground absorbs those bullets. And in Johnson, different scenario, the defendant there was threatened by someone, fired the gun into the ground in the direction of that person, and the bullet ricocheted and hit that person in the chest. But what we had in Moreno was a defendant who was firing away from anyone, into a ground with no evidence of ricochet. And that didn't endanger anyone. Can I please ask you a question? Yes. Just to further distinguish, or another distinguishing of Moreno is that we're talking about identifiable individuals that the court is saying virtually there was no danger with these particular individuals as to where they were and where the shots occurred, wherein it seems to be in this case the argument is potential ricochet in the front yard of a neighborhood. And so in the court's view, my view, it's distinguishable from the Moreno decision. Can you speak to that? Absolutely. I think actually the circumstances are a bit more analogous, because in Moreno you had a backyard where the defendant lived. He fires into the ground and the state presented no evidence of ricochet. There was some, there was speculation as to whether or not a backyard in Juliet might have things in the ground, but the idea there is this is defendant's yard. There's no evidence that those bullets would have ricocheted. Similarly, this is Robert's front yard. He testified that he had cleared the area of light snow that had fallen earlier in the day for his dogs, and there's no evidence of ricochet. I'd say in Moreno there are more people around. They're right behind him. But here, the closest person that's outside is 270 feet away, diagonally across the street at his front door, and there's no evidence of ricochet. And that's how the circumstances are analogous. Mr. Engels. Inside of his house. Directly across. Right. But again, that distinction or that saying that it matters is when you're firing into the air, because you don't know where the bullets are going to land. Here. But again, there's a dispute as to how exactly the gun was fired. Your argument starts with the premise that we have to accept the fact that he's firing into the ground. Actually, that's not the premise. The premise is you have to accept that the State didn't prove that he was firing into the air, because otherwise the State doesn't prove recklessness or endangerment. If he's firing into the ground, then we have a different analysis, and the case is more analogous to Moreno. Which would be a fact question for the fires of fact. Did they believe the State's witnesses? Absolutely, but with the evidence presented to the jury. If the jury believed that he fired into the air, it wouldn't be based on the evidence that the State presented, because the State failed to present any evidence on the direction that that firearm was pointed. Again, we go back to Mr. Tarr. And I understand your argument is the lack of sufficient proof, but I just want to point out the other. And I gleaned from my review of the materials that there's one instance of the three rounds of shooting where there's no evidence of anyone having seen, and maybe it being less loud. And so there was sort of a different scenario as to the little evidence we have of the angle of the shot. Actually, the defendant doesn't even acknowledge that there are three incidents of shooting. He talks about one incident of shooting, five to nine rounds. In reality, Mr. Ingalls says there were three incidents of shooting. The first two, four to five rounds. The third round being louder, and that was more like, I think he said he counted seven rounds. Right. That is significantly different than what your... It is different. ...defendant... It is different, but it also doesn't speak to where the defendant was shooting. And again, even if the jury discounted everything defendant said, the State still didn't present evidence on the direction the defendant was firing the gun. So if there are no other questions on the first issue, I'd like to move on to the second issue, which is that the court's failure to answer the jury question of law was error. Now, during deliberations, the jury asked whether the element of endangering the bodily safety of an individual included the defendant, and the trial court told the jury it had all the instructions it needed. But because this was a question of law, this was error because the court must instruct the jury on specific questions of law. Now, the State argues that the answer that endangering an individual did not include the defendant was without legal precedent. But that's not the way that the grant court addressed it. The grant court, of course, decided this issue after the trial. But the grant court held that this has been the way the reckless discharge statute has been construed and included in citation Collins and Moreno. And that Moreno was decided only six months before trial doesn't really matter here because the court and the parties were very well aware of Moreno. It's in the record. They relied on it in their discussions. So they understood that in that case, the court found that the defendant wasn't guilty of reckless discharge of a firearm where he only harmed himself by shooting a blank at his hand. And the grant court also relied on Peters, which is a 1989 case out of the Second District, which resolved the question of who an individual was for the reckless conduct statute. And so the grant court found that an individual meant the same under either statute. We know that it's someone other than a defendant. The State also argues that the jury asked the court to help them decide the ultimate issue in this case. But that belies the nature of the question itself because there's only one answer to this question. And that's you must determine whether a defendant endangered an individual other than himself. There's no other factual scenario where a defendant would be guilty of this offense if he only endangered himself. And that demonstrates how important resolution of this question was for the jury because it went directly to whether or not he endangered anyone. If one juror believed that the defendant had endangered only himself, then he would have been acquitted. And also in this case, the jury indicated that it had been deadlocked and it requested the defense expert's testimony, so clearly it was struggling with the evidence. Now this error, of course, was not preserved. This court can reach it under plain error or ineffective assistance of counsel. The evidence is closely balanced here. Under the first prong of the plain error doctrine you have two competing versions and you also have the defendant's substantial rights because it denied him a fair trial or the jury wasn't properly instructed. And if alternatively this court finds it's an ineffective assistance, it's because counsel should have objected to this particular answer. Counsel didn't fail to predict a change in the law as the state had argued because this had been the law at least since 1989 and there was no reasonable trial strategy to not answer a question that was important to the jury's determination of guilt. And so if there are no further questions, because this jury's explicit question of law wasn't answered, the jury wasn't properly instructed, and because Robert was denied a fair trial, he respectfully requests a new trial. Thank you. Thank you, counsel. You will have additional time on rebuttal. Ms. McClain? May it please the court? Counsel? The state is arguing that the defendant was proven guilty of reckless discharge of a firearm beyond a reasonable doubt. Viewing the evidence in the light most favorable to the state, deferring to the jury on issues relating to the weight of the evidence and witness credibility and allowing all reasonable inferences from the record in favor of the prosecution, this court should affirm defendant's conviction. Defendant testified that he shot his semi-automatic pistol safely into the ground and argues that he was therefore not reckless and did not engage or anybody. However, eyewitness Carr testified that the muzzle flash was even with the front door doorbell light. The jury heard this evidence and decided that defendant did not shoot safely into the ground. The porch light was on, but Carr saw no person firing the gun, so the inference is perhaps that defendant was standing inside when he was shooting the gun, even with the doorbell light.  shot into the ground and did not engage. In addition, the neighbor Engels described hearing three groups of shots within a few minutes between each set. In between one set, he even had time to talk to his children. Carr was alerted to the shots by a phone call from a neighbor and then walked out on his front porch to observe the shots occurring. The testimony of these two witnesses directly contradicts defendant's testimony that it took 10 seconds or less. Moreover, the physical evidence does not support defendant's version. The police found six spent shell casings on the front porch and one inside the front door. Defendant's expert Keller testified that defendant could have been standing in a lot of positions for these casings to end up where they did. This testimony eliminates the significance of the location of the casings. In addition, there was an hour between the time defendant test fired his gun and the time police arrived. He had an opportunity to dispose of the casings during that hour. Engel, I counted, and I'm not quite sure if this is completely accurate, but Engel heard about 17 or 18 gunshots and only seven casings were found. So something happened to those other casings. In view of this evidence, and I believe it's a credibility call,  as far as the instruction, the State maintains that trial court did not err when, in response to a question, it told the jury that it had all the instructions it needed. Defendant affirmatively acquiesced in the response given when his counsel submitted a joint response with the prosecutor. In addition, plain error analysis does not apply to an affirmative acquiescence. However, the State is maintaining no error occurred at all. The court did not base its response on an incorrect view of the law at the time of trial until the first district appellate court addressed what consists of an individual for purposes of a reckless discharge of a firearm conviction in 2017. No court had addressed this specific issue. At the time of this trial in 2015, the idea that an individual in the statute would not include defendant was without legal precedent. Even defense counsel in his post-trial motion agreed that an individual may include defendant himself. I know my opponent has asserted that this did not go to an ultimate legal issue. I argued that the court would be committing error by answering the question because it went to an ultimate legal issue in the case. The court could answer with a yes or no. If the court answered that defendant could endanger himself, defendant would be guilty. So the court would have assisted and decided the ultimate legal issue and could have directed the verdict. It depended on the answer. The court in this case determined that the IPI instructions accurately stated the law. The court said it had conducted research in the annotated statute and had found nothing. So I assert that the court did not err in failing to elaborate further on what an individual was in this case. However, also error arising from the tendering of the jury instruction was harmless in this case because even if the jury had been instructed that an individual does not include defendant, the jury could not possibly acquit. The defendant shot in a residential neighborhood, car was present outside his house, defendant's girlfriend was in the house, and there were houses in the vicinity of the shooting as was presented to the jury. And I think that defendant's opposing counsel is based on a hindsight analysis and counsel should not be held incompetent for failing to predict the change in the law. Are there any questions? I don't see any at this time, counsel. Thank you. Any rebuttal, Ms. Rosario-Moore? Thank you, Your Honor. Just a few notes here. As far as acquiescence, this doesn't apply because there was a substantial defect in the jury instructions here. The jury was not properly instructed because they asked an explicit question of law, and so in as far as counsel agreed with the response, that's ineffectiveness because he didn't understand the law. There's nothing that counsel could have said strategically to justify not answering this question, considering how important it was to the jury's determination of guilt. And when there's a substantial defect, this court can address the error in the interest of justice under the Plain Error Doctrine. Again, the answer to this question would only direct the verdict if there was a factual element to it. There's no factual scenario in which the defendant could be found guilty if he endangered himself, and therefore the answer is purely legal, and even though the statute doesn't state explicitly who an individual is, that's not unlike other criminal law statutes. As Grant pointed out, under the Murder Statute, the Battery Statute, the Reckless Conduct Statute, an individual means someone other than defendant, and therefore counsel clearly didn't understand the law in this case, and so acquiescence shouldn't apply. If there are no further questions...  Thank you so much. At this time, we'll take this matter under advisement and be in recess.